## MATTER OF LAU

## In Deportation Proceedings

### A–19060170
### A–19082734

*Decided by Board May 17, 1974*

(1) Notwithstanding the precertification was obtained from a district director and not from a consular office abroad, respondent, a section 245 applicant for adjustment of status, who in February 1969 obtained a labor certification as a master tailor under the Schedule C—Precertification List of the Department of Labor, but who was prevented from using it by the improper suspension of the Precertification List, comes within the rationale of *Lewis-Mota* v. *Secretary of Labor*, 469 F.2d 478 (1972), which, in effect, held that the suspension was invalid until March 4, 1971. Therefore, respondent, who had a nonpreference priority date of at least July 7, 1969, falls within the functional class of aliens entitled to the benefits of the *Lewis-Mota* decision and implementing order which comprise precertified Western Hemisphere aliens with visa priority dates earlier than January 1, 1970, and precertified Eastern Hemisphere nonpreference aliens with visa priority dates earlier than April 1, 1970. Hence, an immigrant visa is immediately available to him, assuming he qualified for his labor percertification.

(2) Notwithstanding the district director lacked authority under the regulations to determine on February 10, 1969, that respondent was precertified under Schedule C—Precertification List, since the precertification determination was made at a time when such action was contemplated by regulations not yet effective, and since the respondent evidently complied with the necessary requirements, he is considered to have been validly "precertified" as of March 18, 1969, the date of publication of the Service regulations authorizing district directors to make precertification determinations.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted (both aliens).

ON BEHALF OF RESPONDENTS:   Hiram W. Kwan, Esquire
840 North Broadway
Los Angeles, California 90012

The alien respondents have appealed the January 3, 1973 decision of an immigration judge in which they were found deportable, were denied adjustment of status under section 245 of the Immi-

gration and Nationality Act, and were granted the privilege of voluntary departure. The appeal will be sustained.

The respondents, natives and citizens of China, are husband and wife. They have conceded deportability as nonimmigrants who have remained beyond the authorized length of their stays. Prior to the institution of these proceedings the respondents had applied for adjustment of status before a District Director. Those earlier applications were denied; however, the respondents renewed their requests for relief under section 245 at the hearing before the immigration judge. See 8 CFR 245.2(a)(4). The only issues on appeal involve these applications for adjustment of status.

An alien may not be granted adjustment of status under section 245 unless he establishes that he is statutorily eligible for the relief. In order to satisfy the basic statutory prerequisites the alien must demonstrate that he has been inspected and admitted or paroled into the United States, that he is eligible to receive an immigrant visa and admissible for permanent residence, and that an immigrant visa is immediately available to him at the time his application is approved. The respondents were inspected and admitted as nonimmigrants. They do not appear to be inadmissible under any of the "qualitative" provisions of the Act. Consequently, there eligibility for relief under section 245 depends on whether they qualify for the immigrant status which they seek, and whether immigrant visas are immediately available to them in that status. The respondents, as natives of an Eastern Hemisphere country, have sought adjustment of status as nonpreference immigrants. There are two primary issues in this case: (1) whether the respondents have met the labor certification requirements of the Act for nonpreference status; and (2) whether immigrant visas are currently available to them in that status.

At the hearing below the male respondent maintained that he was exempt from the labor certification requirements of section 212(a)(14) as an investor within the contemplation of 8 CFR 212.8(b)(4). The immigration judge apparently found that the male respondent had not adequately substantiated his claim to the investor exemption, and on that basis found the male respondent statutorily ineligible for adjustment of status. The female respondent was also found ineligible for section 245 relief because her claim was inextricably tied to that of her husband. Subsequent to the immigration judge's decision in this case the regulation governing the "investor" exemption was amended. See 38 FR 1380 January 12, 1973), 38 FR 8590 (April 4, 1973). The Service will now evaluate any claim made prior to the amendment under whichever version of the regulation is most favorable to the alien. *Matter of Ko,* Interim Decision No. 2201 (Dep. Assoc. Comm. 1973); see also

*Matter of Heitland*, Interim Decision No. 2259 (BIA 1974). The male respondent's assertions regarding the amount of his investment would appear to bring him within the terms of the present version of 8 CFR 212.8(b)(4). However, the male respondent's proof as to the amount of his investment is less than satisfactory. Accordingly, we concur in the finding that the male respondent has failed adequately to substantiate his investor claim.

The male respondent has raised another question on appeal regarding his satisfaction of the labor certification provisions of the Act. He basically contends that he should be found statutorily eligible for adjustment of status because he had obtained labor certification under the Schedule C—Precertification List of the Department of Labor, but was prevented from utilizing his precertification in seeking adjustment of status by the improper suspension of the precertification list.

Section 212(a)(14) of the Act basically precludes the issuance of visas to certain aliens, including nonpreference immigrants, who seek to enter the United States for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has certified that: (A) at a given alien's proposed destination there are insufficient United States workers able, willing, qualified and available for employment in the alien's field; and (B) the alien's employment will not adversely affect the wages and working conditions of similarly employed United States workers. As an aid in the certification process, the Secretary of Labor has published schedules which list various occupation categories. Schedule C, which was incorporated into 29 CFR Part 60 on February 1, 1967,[1] set forth a list of occupations which were found to be in short supply generally, but not nationwide. Initially, an alien employed in one of the listed occupations and destined for a geographic area where his occupation was in short supply was eligible for an individual labor certification without demonstrating that he had a specific job offer. See 8 CFR 212.8(c)(4) (1968), 32 FR 852 (January 25, 1967), deleted, 34 FR 5326 (March 18, 1969). The Schedule C which appeared in 29 CFR Part 60 was revoked effective March 1, 1969, and a new Schedule C—Precertification List was established.[2] The Schedule C—Precertification List was not published in the Federal Register; however, copies of the list were available from the Department of Labor which maintained and continually

---

[1] 32 Fed. Reg. 867 (January 25, 1967).
[2] 34 Fed. Reg. 1018 (January 23, 1969).

reviewed the list.[3] The Department of Labor regulations governing precertification provided that "Consular offices abroad and Immigration and Naturalization Service offices will be notified that any alien whose occupation is described in such Schedule C—Precertification List and whose intended place of residence is not excluded from precertification is certified under section 212(a)(14) of the Immigration and Nationality Act."[4] As with the original Schedule C, an alien qualifying under the Schedule C—Precertification List did not need to establish that he had a specific job offer in the United States.

The Schedule C—Precertification List was suspended by the Secretary of Labor on February 9, 1970. An indication of the suspension was finally published in the Federal Register on February 4, 1971,[5] when 29 CFR Part 60 was revised and the Schedule C—Precertification List was eliminated. The earlier unannounced suspension of the Schedule C—Precertification List was successfully attacked in *Lewis-Mota* v. *Secretary of Labor*, 469 F.2d 478 (C.A. 2, 1972).

*Lewis-Mota* was a class action instituted by aliens who had received labor precertifications endorsed by United States consular officials. The court determined that the suspension of the Schedule C—Precertification List was invalid until 30 days after notice of the suspension had actually been published in the Federal Register. The district court order implementing the court of appeals decision benefits aliens whose precertification determinations were adjudicated by consular officials, and who had priority positions for the issuance of immigrant visas which would have been reached by March 4, 1971.[6] Qualifying aliens are to be given two years from June 11, 1973, the date of the district court order, in which "to request appointments to apply for immigration

---

[3] The Schedule C—Precertification List appears to have included all but 24 of the occupations originally published in Schedule C. See Department of State Airgram No. A-6857 (August 9, 1973). Pertinent portions of Airgram No. A-6857 have been reprinted by the American Council for Nationalities Service in *Interpreter Releases*, Vol. 50, No. 37, September 4, 1973. The Immigration and Naturalization Service has provided us with a copy of Airgram No. A-6857.

[4] 29 CFR 60.3(c) (1970), 34 FR 1018 (January 23, 1969).

[5] 36 FR 2462.

[6] The United States Court of Appeals for the Second Circuit declared the suspension of the precertification list invalid until 30 days after February 4, 1971, the date on which the Schedule C—Precertification List was eliminated by the revision of 29 CFR Part 60. On remand the district court held the suspension invalid until March 4, 1971, but valid thereafter. Since the month of February 1971 had only 28 days, there would appear to be a slight discrepancy between these two decisions.

visas," and thus retain their precertifications and priority dates. *Lewis-Mota* v. *Secretary of Labor*, Civil No. 71 Civ. 469 MP (S.D.N.Y. June 11, 1973). The Visa Office for the Department of State has determined by extrapolation that the class of persons benefited by the *Lewis-Mota* decision would comprise precertified Western Hemisphere aliens with visa priority dates earlier than January 1, 1970, and precertified Eastern Hemisphere nonpreference aliens with visa priority dates earlier than April 1, 1970.[7]

Exhibit 2 of the record contains a form which indicates that the male respondent was found to be precertified as a Master Tailor on February 10, 1969. This determination appears to have been made by a district office of the Immigration and Naturalization Service and not by the Department of Labor. The male respondent's precertification was not endorsed by a United States consular official; consequently, he does not fall within the *precise* class of aliens benefited by the district court order in *Lewis-Mota*. Furthermore, there is some question as to whether the District Director had authority to determine Schedule C precertifications in February of 1969.

On the date that the male respondent was found to be precertified, the applicable Service regulations required that information regarding an alien claiming to fall within Schedule C be forwarded to the Department of Labor for actual issuance of the labor certification. 8 CFR 212.8(c)(4) (1969), 32 FR 852 (January 25, 1967); 8 CFR 245.2(b)(1) (1969), 32 FR 853 (January 25, 1967). However, prior to February 10, 1969, the Department of Labor had published the new regulations governing the Schedule C—Precertification List. These new regulations became effective on March 1, 1969,[8] which was subsequent to the District Director's precertification determination in this case. Shortly *after* the February 10, 1969 date, the Service regulations were amended to permit district directors to determine whether an alien was precertified under the Schedule C—Precertification List. 8 CFR 204.1(d)(2) (1970, 34 FR 5325 (March 18, 1969); 8 CFR 245.2(b)(1) (1970), 34 FR 5326 (March 18, 1969). Although in a sense "obsolete," it was the individual certification procedure which technically governed when the male respondent was found to be precertified. Consequently, the District Director's precertification determination appears to have been made at a time when such action was contemplated by regulations not then effective.[9]

---

[7] Department of State Airgram No. A–6857, *supra*, footnote 3.

[8] 34 FR 1018 (January 23, 1969).

[9] There is no indication in the announcements of these regulations that a formal directive authorizing this procedure was previously issued to the district offices.

Nevertheless, the male respondent evidently complied with every requirement placed upon him during this period of time. Accordingly, we shall consider the male respondent to have been validly found "precertified" on March 18, 1969, the date of publication of the Service regulations authorizing district directors to make precertification determinations.[10] This, then, is the date on which we deem him to have "obtained a certification under section 212(a)(14) of the Act ...." 8 CFR 204.1(d)(2) (1970), 34 FR 5325 (March 18, 1969).

As noted earlier, the male respondent does not fall within the precise class of aliens benefited by the district court order in *Lewis-Mota* v. *Secretary of Labor*, Civil No. 71 Civ. 469 MP (S.D.N.Y. June 11, 1973). However, the basic holding of the United States Court of Appeals for the Second Circuit was that the suspension of the Schedule C—Precertification List was not valid until 30 days after notice of the suspension was published in the Federal Register. *Lewis-Mota* v. *Secretary of Labor*, 469 F.2d 478 (C.A. 2, 1972). The only appearent distinction between the male respondent and the class of aliens benefited by the district court order is that the male respondent's precertification was endorsed by a district director of the Service, and not by a United States consular official. We can perceive no sound reason for refusing to apply the terms of the district court order to the male respondent. There is no functional difference between his situation and that of aliens found to be precertified by consular officials. Accordingly, as a nonpreference immigrant from the Eastern Hemisphere, the male respondent will be entitled to retain his precertification and be eligible for the issuance of an immigrant visa if: (1) he had a priority date earlier than April 1, 1970; (2) he did in fact qualify as a Master Tailor under the Schedule C—Precertification List; and (3) he is not otherwise inadmissible.

The record in this case does not entirely explain the immigration history of the male respondent; however, it appears that he established a priority date for the issuance of an immigrant visa in July of 1969. Exhibit 2 of the record contains the male respondent's application for adjustment of status (Form I-485). The application, with fee paid, was received by the Service no later than on July 7, 1969.

The pertinent portion of 8 CFR 245.1(g), in effect as of that filing, stated:

> The priority date of a nonpreference applicant shall be fixed by the following factors, whichever is the earliest: ... (2) the date on which application Form I-485 is filed, if the applicant establishes that the provisions of

---

[10] 34 Fed. Reg. 5325.

section 212(a)(14) of the Act do not apply to him or that he is within the Department of Labor's Schedules A or C—Precertification List (29 CFR Part 60) . . . .[11]

Since the male respondent had obtained a labor certification pursuant to the Schedule C—Precertification List, his filing of the Form I-485 established a nonpreference priority date in accordance with this regulation.[12]

Having had a priority date of at least July 7, 1969, the male respondent falls well within the functional class of aliens entitled to the benefits of the *Lewis-Mota* decision and the implementing order. Accordingly, an immigrant visa is immediately available to the male respondent, assuming he qualified for his labor precertification.

The record at present therefore indicates that the male respondent is statutorily eligible for adjustment of status. The case must be remanded, however, for a determination as to whether the male respondent's representations concerning his qualifications for Schedule C—Precertification were factually correct,[13] as to whether he is otherwise admissible, and as to whether discretion should be favorably exercised in his behalf. Since the availability of adjustment of status to the female respondent depends upon the case of her husband, we shall also remand her case.

**ORDER:** The appeal is sustained and the records are remanded for further proceedings in accordance with this opinion.

---

[11] 34 FR 5326 (March 18, 1969).

[12] The Service considered the male respondent to be eligible for adjustment of status as a sixth preference immigrant; nevertheless, on the date of his filing he demonstrated eligibility for a nonpreference visa in conformity with this regulation. He is presently a nonpreference applicant and may avail himself of the nonpreference priority date established earlier.

[13] The immigration judge may not rule on the accuracy of the District Director's conclusions regarding the sufficiency of the stated qualifications for precertification. *Matter of Grove,* 13 I. & N. Dec. 572 (BIA, 1970). On remand, the inquiry in this regard must be limited to whether the male respondent actually had the work experience and training which he claimed at the time of the precertification determination. See *Matter of Belmares-Carrillo,* 13 I. & N. Dec. 195 (BIA, 1969); *Matter of Hernandez-Uriarte,* 13 I. & N. Dec. 199 (BIA, 1969).